# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LOGAN N. MILLS (#532042)**                                    **CIVIL ACTION**

**VERSUS**

**VINCENT KNIGHT, ET AL.**                              **NO. 17-0161-SDD-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 22, 2018.


                                              _____
                                              **ERIN WILDER-DOOMES**
                                              **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LOGAN N. MILLS (#532042)**                                      **CIVIL ACTION**

**VERSUS**

**VINCENT KNIGHT, ET AL.**                                      **NO. 17-0161-SDD-EWD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motion to Dismiss of Defendants Vincent

Knight, Gary Sibley, Cedric Ferguson, Paul Smith, Darrel Vannoy and James LeBlanc (R. Doc.

13).    This Motion is opposed.

*Pro se* plaintiff, an inmate previously incarcerated at the Louisiana State Penitentiary

("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Major Vincent

Knight, Capt. Gary Sibley, Lt. Elliott Beauchamp, Lt. Cedric Ferguson, Lt.Col. Paul Smith, Legal

Programs Director Trish Foster, Warden Darrel Vannoy and Secretary James LeBlanc.[1]    As

discussed in greater detail hereafter, Plaintiff alleged in his Complaint that Defendants have

violated his constitutional rights through alleged acts of retaliation committed in response to an

administrative grievance ("ARP") that Plaintiff submitted to prison officials in October 2015.[2]

---

1       Defendants Elliott Beauchamp and Trish Foster have not yet appeared in this proceeding
and have not participated in the instant Motion.

2       In his Opposition to Defendants' Motion to Dismiss, Plaintiff asks, in the alternative, for
leave of Court to amend his Complaint, purportedly to "cure any deficiencies this Court may find"
therein.    *See* R. Doc. 18 at pp. 14-15.    Notwithstanding, the Court has now addressed several
motions by Plaintiff to amend or supplement his Complaint, *see* R. Docs. 24, 28 and 29, and has
entered an Order denying Plaintiff leave to do so.    *See* R. Doc. 34.    In addition, the Court finds
that Plaintiff has included a detailed factual recitation in his Complaint that is consistent with the
factual assertions contained in his Opposition and other pleadings, and the Court concludes that
any further amendment would be futile and is unnecessary.

In response to Plaintiff's allegations, Defendants assert in the instant Motion to Dismiss, in reliance upon Rule 12(b)(6) of the Federal Rules of Civil Procedure that Plaintiff has failed to state a claim upon which relief may be granted against them.    In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6).    Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."    *Bell Atlantic Corp. v. Twombly, supra*, at 555.    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"    *Ashcroft v. Iqbal, supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly, supra*.    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."    *Id*.    It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"    *Id*. at 679.    "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"    *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."    *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).    Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"    *Id*. (citation omitted).    Even a *pro se* complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of

misconduct." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678.   The court need not accept "a legal

conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or

"naked assertions [of unlawful conduct] devoid of further factual enhancement."   *Ashcroft v.*

*Iqbal, supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, Plaintiff alleges that on or about October 1, 2015, he submitted an

administrative grievance to prison officials, complaining about "an incident of verbal abuse and

threats that occurred the previous day" involving Defendant Vincent Knight and another security

officer, Capt. Michael Simpson (not named as a defendant herein).   According to Plaintiff, this

administrative grievance resulted in a subsequent "ongoing" pattern of retaliation by multiple

officials employed at LSP.   As discussed in greater detail below, Plaintiff alleges that this

retaliation took the form of (1) an act of intimidation and an implied threat of retaliation by

Defendant Knight and Capt. Simpson on October 28, 2015 when Plaintiff refused to discuss or

withdraw the grievance, (2) false disciplinary charges issued on December 2, 2015 by Defendants

Sibley and Beauchamp (for misuse of prison computers and for threatening to file a lawsuit,

respectively), (3) placement in an administrative lockdown cell with a known sexual predator on

December 2, 2015 by Defendant Ferguson, (4) a transfer to a prison out-camp on or about January

20, 2016 by Defendant Foster, and (5) interference by Defendant Foster with the handling of

Plaintiff's subsequent administrative grievances filed relative to the foregoing misconduct.

In response to Plaintiff's allegations, Defendants Vannoy and LeBlanc first seek dismissal

of Plaintiff's claim asserted against them in their official capacity for monetary damages.[3]   In this

---

3      Defendants' Motion only addresses the issue of official capacity in connection with
Defendants Vannoy and LeBlanc.   This is because Plaintiff's Complaint is clear that he is suing
Defendants Vannoy and LeBlanc only in their official capacities and that he is suing the remaining
Defendants only in their individual capacities.   *See* R. Doc. 1 at pp. 2-3.

regard, Defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks

monetary damages against either a state or its officials acting in their official capacities,

specifically because these officials are not seen to be "persons" within the meaning of § 1983.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).   *See also Hafer v. Melo*,

502 U.S. 21 (1991), wherein the United States Supreme Court addressed the distinction between

official capacity and individual capacity lawsuits and made clear that a suit against a state official

in an official capacity for monetary damages is treated as a suit against the state and is therefore

barred by the Eleventh Amendment.   *Id.* at 25.   Notwithstanding, Plaintiff's pleadings make

clear that he is not asserting a claim for monetary damages against Defendants Vannoy and

LeBlanc in their official capacities.   *See* R. Doc. 1 at pp. 2-3.   *See also* R. Doc. 18 at p. 6,

wherein Plaintiff states that he "filed suit against Defendants Vannoy and LeBlanc in their official

capacities … to promulgate a policy" at LSP.   In this regard, a claim for prospective injunctive

relief asserted prison officials in their official capacities is not barred by the Eleventh Amendment

because such a claim is not seen to be a claim asserted against the state.   *See Will v. Michigan*

*Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 Am. Jur. 2d *Civil Rights* § 101.

Accordingly, inasmuch as Plaintiff makes no claim herein against Defendants Vannoy and

LeBlanc in their official capacities for monetary damages, this part of Defendants' Motion that

seeks dismissal of such a claim is without merit and should be rejected.

Turning to Plaintiff's remaining claims asserted against Defendants, the Court next notes

that Plaintiff is not entitled to recover *compensatory* damages from any Defendant in this case in

any event.   Specifically, pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be

brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior

showing of physical injury."   Plaintiff does not suggest in his Complaint that he has suffered any

physical injury as a result of the events alleged herein.    Accordingly, he is precluded from the recovery of compensatory damages and will be limited to a recovery of nominal or punitive damages if successful.    *See Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).    Further, in order to recover punitive damages, Plaintiff would be required to make a showing that Defendants violated his constitutional rights with "evil intent" or "callous indifference."    *See Allen v. Stalder*, 201 Fed. Appx. 276 (5th Cir. 2006), *citing Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003).

The Court next addresses Defendants' assertion that they are entitled to qualified immunity in connection with Plaintiff's substantive claims.    Invoking this defense, Defendants contend that Plaintiff's allegations are insufficient to establish that any Defendant has participated in a violation of Plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.    *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).    Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred.    *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first.    This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.    *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly

established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to Plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.

Undertaking the qualified immunity analysis with respect to Plaintiff's claims against the moving Defendants, the Court concludes that Defendants' Motion to Dismiss should be granted, dismissing Plaintiff's claims asserted against these Defendants.

The essence of Plaintiff's claims against the moving Defendants is that he has been retaliated against in several respects in response to his exercise of the constitutional right to seek redress of grievances, *i.e.*, in response to his filing of an administrative grievance against prison security officers on October 1, 2015. In this regard, it is prohibited for prison officials to take action against an inmate in retaliation for the inmate's exercise of his constitutional rights, as for example, the inmate's exercise of his First Amendment right to seek redress for grievances. *See Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris v Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Claims of retaliation by prison inmates, however, are regarded with great skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution. *Woods v. Smith, supra*, 60 F.3d at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that

the defendants intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendants, and (4) that there is causation, *i.e.*, that "but for" the retaliatory motive, the adverse action would not have occurred.    *Morris v. Powell, supra*, 449 F.3d at 684.    *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).    Further, an inmate must allege more than his mere personal belief that he is the victim of retaliation, *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997), and inasmuch as claims of retaliation are not favored, it is Plaintiff's burden to provide more than conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred.    This places a significant burden on the inmate....    The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

*Woods v. Smith, supra*, 60 F.3d. at 1166.

Undertaking the foregoing analysis, the Court finds that Plaintiff has failed to sufficiently allege a factual basis for his claims of retaliation against the moving Defendants and has failed to show that the retaliation complained of amounted to adverse action that was greater than *de minimis*.    The Court will hereafter address each alleged incidence of purported retaliation by the moving Defendants in the order of its occurrence.

a.  *Intimidation and implied threat by Defendant Knight on October 28, 2015.*

First, Plaintiff alleges that after he filed his initial administrative grievance on or about October 1, 2015, complaining therein regarding a verbal dispute the previous day involving Defendant Vincent Knight (and Capt. Michael Simpson), he was called to Defendant Knight's office on October 28, 2015 and was allegedly subjected to intimidation by Defendant Knight. According to Plaintiff, Defendant Knight and Capt. Simpson were reviewing Plaintiff's ARP at

that time, and Defendant Knight stated that he did not remember the verbal altercation.[4]    Plaintiff

alleges that Defendant Knight then "stared at Plaintiff" in an intimidating manner and "walked

towards Plaintiff" in the office, asking Plaintiff what he wanted.    Plaintiff responded to Defendant

Knight that he felt uncomfortable and that he was unwilling to talk about the ARP or to voluntarily

withdraw it.    Defendant Knight then simply stated "alright" and gestured for Plaintiff to leave the

office.

Based on the foregoing, the Court finds no legal or factual basis for a finding that the

alleged conduct of Defendant Knight on December 28, 2015 amounted to anything more than a *de*

*minimis* act that does not support a federal claim of retaliation.    Specifically, there is no

suggestion in Plaintiff's Complaint that Defendant Knight physically accosted Plaintiff, utilized

any force whatever against Plaintiff, overtly threatened such use of force, or even made a clear

verbal threat of future retaliation.    According to Plaintiff, all that Defendant Knight did was

approach Plaintiff and ask what Plaintiff wanted, after which Defendant Knight gestured for

Plaintiff to leave.    Clearly, even if Plaintiff felt "uncomfortable" in Defendant Knight's office,

felt intimidated by the close-quarters contact, or believed that there was an implied threat in

Defendant's Knight's conduct, there is no suggestion that anything of significance occurred on

---

4       Plaintiff alleges that in the interim, several days after the filing of the initial grievance, he
was informed by a co-inmate who worked in the Legal Programs Department at LSP that
Defendant Trish Foster, the Director of the Program, had just received Plaintiff's grievance and
was relaying an inquiry whether Plaintiff wanted the grievance processed or was willing to
withdraw it.   When Plaintiff informed the co-inmate that he was unwilling to withdraw the
grievance, the co-inmate informed Plaintiff that it was likely that Plaintiff would ultimately be
retaliated against for filing the grievance, either through trumped-up disciplinary charges or by
other means.   Whereas Plaintiff would like for the Court to infer that this threat of likely future
retaliation that was communicated to Plaintiff by the co-inmate was in fact relayed indirectly by
Defendant Foster, this appears to be purely conjectural and is not supported by any factual basis.
It appears more likely that the co-inmate was expressing an opinion based upon personal
experience within the prison system that the filing of Plaintiff's grievance and refusal to withdraw
same might have further consequences thereafter.

that date that can be categorized as being greater than *de minimis*.    Accordingly, Plaintiff has

failed to state a claim of retaliation relative to Defendant Knight's conduct on October 28, 2015,

and this aspect of Plaintiff's claim is subject to dismissal.

>    b.  *Disciplinary charge issued by Defendant Sibley on December 2, 2015.*

Plaintiff next alleges that on December 2, 2015, over a month after the incident in

Defendant Knight's office and two months after Plaintiff submitted the initial grievance against

Defendant Knight, Plaintiff was approached by Defendant Elliott Beauchamp and instructed to

pack his belongings because he was being charged with a rule violation.    When Plaintiff inquired

as to the basis therefor, Defendant Beauchamp responded that Plaintiff was being accused (by

Defendant Gary Sibley) of utilizing office equipment for personal reasons without authorization.

Before leaving the dormitory, Plaintiff communicated with a supervising official, Defendant Paul

Smith, who was present in the dormitory at the time, and advised Defendant Smith that Plaintiff

believed he was being retaliated against because of the earlier grievance filed by Plaintiff against

Defendant Knight.    According to Plaintiff, Defendant Smith then took no action in response to

this communication and merely responded that he did not know "anything about that."    Plaintiff

was then escorted by Defendant Beauchamp to administrative segregation, where he was to be

held pending the disposition of the referenced disciplinary charge.    During the escort, Plaintiff

again communicated his belief that he was being retaliated against and stated to Defendant

Beauchamp that he planned to file a lawsuit as a result.    According to Plaintiff, this statement led

to a second disciplinary charge, this one issued by Defendant Beauchamp, improperly accusing

Plaintiff of making a threat of legal action against a security officer.

In connection with the foregoing, Plaintiff asserts that the issuance of the above-referenced

disciplinary report on December 2, 2015 by Defendant Sibley (and Plaintiff's placement in

administrative segregation without intervention by Defendant Smith) amounted to an additional

act of retaliation in response to the grievance Plaintiff had initially filed against Defendant Knight

in October 2015.[5]    There are several problems with this assertion.    First, Plaintiff offers no more

than his conclusory belief that the disciplinary charge was levied by Defendant Sibley in retaliation

for the grievance that Plaintiff had filed two months before.    Neither Defendant Sibley nor

Defendant Smith was alleged to have been named in the initial grievance against Defendant

Knight, and neither Sibley nor Smith was apparently involved in the events giving rise thereto.

Nor does Plaintiff allege that these Defendants gave any indication whatever during the events

alleged that the disciplinary charge was retaliatory in nature.    Thus, Plaintiff has failed to provide

a chronology of events that plausibly suggests a retaliatory motive for the charge by these

Defendants.    Second, Plaintiff fails to establish that "but for" any potential retaliatory motivation,

the disciplinary charge would not have been levied against him in any event.    He acknowledges

in his pleadings that, in his position as an inmate legal assistant at LSP, he had access to office

computers to assist other inmates with their legal work and that he did in fact utilize the computers

for his personal use, *i.e.*, for authoring his own inmate grievance against Defendant Knight in

October 2015.    Accordingly, regardless of the relative merit of the disciplinary charge, it appears

clear that Plaintiff did in fact engage in the conduct that supported the charge made, and that charge

may well have been brought against him notwithstanding any potential retaliatory motivation.

Finally, and most importantly, the Court finds that the adverse consequence suffered by Plaintiff

as a result of the referenced disciplinary charge was *de minimis* in any event. Specifically, Plaintiff

concedes that the referenced charge was dismissed at a disciplinary hearing conducted several days

---

5    Whereas Plaintiff alleges in his Complaint that the disciplinary charge issued by Defendant
Beauchamp on the same date also amounted to an act of retaliation that is actionable herein,
Defendant Beauchamp has not yet appeared in this proceeding, and the Court will refrain from
addressing this aspect of Plaintiff's Complaint at this time.

later on December 10, 2015, and the Court finds that he therefore suffered no significant adverse consequence as a result thereof, other than a brief period of confinement in administrative segregation.

In the context of brief periods of confinement in administrative segregation during the investigation of pending disciplinary charges, particularly when the disciplinary charges are thereafter resolved in favor of the inmate, this Court has found such confinement to be *de minimis* in nature. *See Irby v. Cain*, No. 13-0327-SDD-RLB, 2014 WL 1028675 (M.D. La. March 17, 2014). In *Irby*, this Court found to be *de minimis* an inmate's 4-day stay in administrative segregation that resulted in a disciplinary sentence of only a verbal reprimand. In doing so, this Court noted that "[t]he Fifth Circuit has not provided a bright line test for determining when a retaliatory action exceeds the *de minimis* threshold." *Id.* at *6. This Court further opined that "[i]t is appropriate for the Court to consider the frequency of occurrence and the length of duration of the retaliatory action in evaluating whether the *de minimis* threshold has been met." *Id.* Finally, this Court noted that whereas the Fifth Circuit has found to be greater than *de minimis* a *punitive* confinement in administrative segregation of 27 days combined with a like period of commissary restriction, *see Hart v. Hairston*, 343 F.3d 762 (5th Cir. 2003), it is appropriate to distinguish that finding where the confinement has been shown to be of much shorter duration and to have been principally administrative in nature. Thus, this Court stated in *Irby*:

> [W]ith regard to the four days which the plaintiff spent in administrative segregation prior to the disciplinary hearing, the Fifth Circuit has concluded, in *Hart v. Hairston*, that a disciplinary sentence of 27 days of "cell confinement," together with a loss of commissary privileges for a similar period, exceeds the *de minimis* threshold. In doing so, the *Hart* Court relied upon jurisprudence from other Circuits and quoted a Sixth Circuit case for the proposition that an "action comparable to transfer to administrative segregation would certainly be adverse." *Id.* at 764, *citing Thaddeus-X v. Blatter,* 175 F.3d 378, 396 (6th Cir. 1999). In *Hart,* however, the plaintiff's "cell confinement," while perhaps akin to administrative segregation, was punitive confinement of almost a month's duration and was imposed as punishment for the inmate's violation of prison rules. In the

instant case, in contrast, the plaintiff was placed in administrative segregation for only four days and was so confined, not as part of an imposed punishment as in *Hart,* but as a period of temporary detention pending a resolution of the disciplinary charge.   Thus, the situation in this case is more akin to that presented in *Smith v. Hebert*, [533 Fed. Appx. 479, 481-82 (5th Cir. 2013)], where the Fifth Circuit upheld the dismissal of a retaliation claim asserted by an inmate who had allegedly been falsely charged with drug trafficking in prison and placed in administrative segregation pending an investigation and disciplinary hearing on the charge. Because the disciplinary charge was later dismissed without the imposition of any punishment, the district court concluded that the retaliatory adverse action was *de minimis* as a matter of law because no adverse punishment had been imposed…. The Fifth Circuit thus accepted the district court's conclusion that the dismissed disciplinary charge [and an imposed minor sanction of a subsequent housing transfer] were not sufficient to support a claim of retaliation under § 1983.   In *Smith,* the Fifth Circuit did not address the period of time that the plaintiff had spent in administrative segregation prior to dismissal of the charge and, thus, implicitly found that such confinement did not result in an adverse retaliatory act that was greater than *de minimis.*[5]   Accordingly, as in *Smith,* this Court similarly concludes that the mere placement of the plaintiff in administrative segregation for a brief period of time after the issuance of the disciplinary report, for investigative purposes and prior to any finding of guilt or punishment in connection therewith, was not alone sufficient to meet or exceed the *de minimis* threshold ….   To conclude otherwise would effectively require that this Court find in all instances that the mere issuance of a disciplinary report exceeds the *de minimis* threshold. This is because, in this Court's experience, inmates at LSP are routinely placed in administrative segregation after the issuance of disciplinary charges to await subsequent disciplinary hearings.   Such disciplinary hearings, as here, normally occur within several days after issuance of the report and so normally result in deprivations of limited duration.   Accordingly, the Court finds that the plaintiff has failed to allege facts sufficient to support a claim of retaliation in this case.

*Irby v. Cain, supra,* 2014 WL 1028675 at *6.

In the instant case, Plaintiff was confined in administrative segregation for a period of only 8 days, after which the disciplinary charge levied by Defendant Sibley was dismissed without adverse consequence, specifically without even punishment such as a verbal reprimand as in *Irby v. Cain, supra,* or a transfer to a different housing location as in *Smith v. Hebert, supra.*   On these facts, the Court is unwilling to conclude that Plaintiff suffered a greater than *de minimis* adverse consequence as a result of the referenced charge.   Accordingly, with only an 8-day stay in administrative segregation and with no resulting punishment whatever, the Court concludes that

Plaintiff has failed to sufficiently state a claim of retaliation against either Defendant Sibley or Defendant Smith and that Defendants' Motion to Dismiss should be granted in connection therewith, dismissing Plaintiff's claims asserted against these Defendants.

   c. *Placement in an administrative segregation cell with a known sexual predator on December 2, 2015 by Defendant Ferguson.*

In connection with the events of December 2, 2015, Plaintiff also alleges that after he was escorted to administrative segregation by Defendant Beauchamp and after Defendant Beauchamp departed, Plaintiff was assigned to a cell in administrative segregation that contained a known sexual predator who was much larger than Plaintiff. In this regard, Plaintiff alleges that after Defendant Beauchamp departed, Defendant Cedric Ferguson, who was apparently supervising the administrative cellblock on that date, asked Plaintiff what Plaintiff was being detained for. Plaintiff responded that he was being retaliated against for a grievance that he had filed against Defendant Knight. According to Plaintiff, Defendant Ferguson then began looking at the logbook to identify a cell that had only a single inhabitant and that could therefore accommodate Plaintiff. Plaintiff asserts that when Defendant Ferguson called out the name of a particular co-inmate's cell, another security officer assigned to the cellblock expressed a concern that Plaintiff was small in stature and that the referenced co-inmate was "much larger." According to Plaintiff, Defendant Ferguson then looked at Plaintiff and opined that Plaintiff would be "alright." Plaintiff asserts that he was then housed in the cell with the "known sexual predator" and that this was an unreasonable determination inasmuch as the co-inmate was "currently in Administrative Segregation for raping another inmate."

Whereas Plaintiff seeks to have this Court find that the above-referenced conduct by Defendant Ferguson amounted to an additional act of retaliation, there is no support for this conclusion. Specifically, Plaintiff's assertion regarding the improper motivation of Defendant

Ferguson is entirely conclusory and conjectural.    It does not follow that merely because Plaintiff communicated to Defendant Ferguson a conclusory belief that Plaintiff was being retaliated against in response to an earlier administrative grievance, that Defendant Ferguson then decided to unilaterally retaliate against Plaintiff by placing him in a cell with a dangerous co-inmate.    To the contrary, all that may reasonably be inferred from Defendant Ferguson's conduct and from Plaintiff's allegations is that, in determining where to house Plaintiff in administrative segregation, Defendant Ferguson made a determination, in the exercise of his discretion, that Plaintiff could safely share a cell with the referenced co-inmate.    Plaintiff does not allege that he specifically complained to Defendant Ferguson of any perceived danger or that Defendant Ferguson made any statement or engaged in any conduct which suggested a retaliatory motivation.    Nor is there any suggestion that the Plaintiff and the referenced co-inmate were known enemies of each other or had been involved in any prior conflict.    Finally, and most importantly, Plaintiff does not allege that he was thereafter accosted or harmed in any way by the co-inmate with whom he shared an administrative segregation cell for a period of several days.    Thus, there was no adverse consequence that resulted from Plaintiff's assignment to the co-inmate's cell, and the conduct of Defendant Ferguson must therefore be seen to be *de minimis* at most and therefor non-actionable herein.

      d.   *Plaintiff's claim for injunctive relief asserted against Defendants Vannoy and LeBlanc.*

      Finally,[6] Plaintiff asserts herein that Defendants Vannoy and LeBlanc, who are the Head

---

6    As noted above, Plaintiff's Complaint also includes several claims regarding alleged wrongdoing and alleged retaliation committed by Defendant Trish Foster, the Director of the Legal Programs Department at LSP.    These claims include the alleged transfer of Plaintiff from the main prison complex at LSP to a prison out-camp on January 20, 2016 and alleged interference with the handling of several administrative grievances filed by Plaintiff wherein he sought to complain regarding alleged wrongdoing of the Defendants named herein.    However, as with Defendant Elliott Beauchamp, inasmuch as Defendant Foster has not yet appeared in this proceeding, the

Warden at LSP and the Secretary of the Louisiana Department of Public Safety and Corrections, respectively, should be compelled to implement a policy at LSP that prohibits any prison official named in an inmate's administrative grievance from "attempting to interfere with the fair and orderly resolution of the offender's [grievance]." This request apparently relates to Plaintiff's alleged distress when he was called to the office of Defendant Knight on October 28 2015 after having authored an administrative grievance against Defendant Knight on October 1, 2015. Plaintiff is not entitled to the relief requested. It is well-settled that prison officials are granted broad discretion in the administration of their respective institutions and in the implementation of policies and practices that, in their judgment, are necessary or appropriate for the safe, orderly and efficient operation thereof. This Court does not generally involve itself in the day-to-day operations of prison facilities and would be loath to dictate to prison officials the manner in which those facilities should be run. As discussed above, nothing whatever of significance occurred when Plaintiff was called to Defendant Knight's office on the referenced date, and it is neither unusual nor inappropriate for prison officials to attempt to amicably resolve prison grievances during the early and preliminary stages thereof without resort to the full administrative process and, ultimately, without resort to litigation. There is nothing before the Court, therefore, that leads the Court to consider deviation from the normal policy of non-intervention in prison affairs. Accordingly, this aspect of Plaintiff's claim is clearly without constitutional merit and should be dismissed.

## RECOMMENDATION

It is recommended that the Motion to Dismiss of Defendants Vincent Knight, Gary Sibley,

---

Court will refrain from addressing Plaintiff's claims asserted against Defendant Foster at this juncture.

Cedric Ferguson, Paul Smith, Darrel Vannoy and James LeBlanc (R. Doc. 13) be granted, dismissing Plaintiff's claims asserted against these Defendants, with prejudice.[7]   It is further recommended that this matter be referred back to the Magistrate Judge for further proceedings in connection with Plaintiff's claims asserted against Defendants Elliott Beauchamp and Trish Foster.

Signed in Baton Rouge, Louisiana, on August 22, 2018.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

7      In light of the recommended disposition of Defendants' Pending Motion to Dismiss, the Court finds it unnecessary to address Defendants' alternative assertion that Plaintiff's claims asserted against them are subject to dismissal because of Plaintiff's failure to timely effect service of process in accordance with Fed. R. Civ. P. 12(b)(5).